IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETRINA W., | ) | |
| | ) | |
| Plaintiff, | ) | 08 CV 3183 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO PUBLIC SCHOOL | ) | Honorable David H. Coar |
| DISTRICT 299, Local School District; | ) | |
| CHICAGO OFFICE OF THE BOARD OF | ) | |
| EDUCATION, and ILLINOIS STATE | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is an appeal of a Due Process Hearing Officer's Decision and Order on the denial of Plaintiff's free appropriate public education under the Individuals with Disabilities Education Improvement Act. Before this Court is a Motion for Summary Judgment filed by Plaintiff, who seeks judgment in her favor on the issue of the ripeness of her compensatory education claim. For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED. This matter is REMANDED with directions.

**FACTS**

Plaintiff Petrina W. is a 19-year-old who has attended public school in Chicago since she was nine years old. Defendant Board of Education of the City of Chicago maintains a system of free schools commonly known as the Chicago Public Schools

District #299 ("School District"). Defendant Illinois State Board of Education ("Board") is the administrative body that heard Petrina's Due Process Hearing and bears the responsibility for providing a free appropriate public education ("FAPE") to Illinois students with learning disabilities. (Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. SOF") ¶ 6.)

Petrina was diagnosed with a learning disability in March 2000, when she was ten years old. (Pl. SOF ¶ 4, 11.) The School District thereafter developed an Individualized Education Program ("IEP") for her. (Pl. SOF ¶ 11.)

On August 2, 2007, Petrina filed a due process request pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et. seq.*, seeking placement at a private therapeutic school and requesting compensatory education beyond her 22nd birthday to compensate for her lack of an appropriate education. (Pl. SOF ¶ 30.) An Impartial Due Process Hearing was held on December 3-7, 2007, with additional hearing days in January 2008. (Pl. Ex. A, Order at 2.)

The Hearing Officer issued her Decision and Order on February 4, 2008. (Pl. SOF ¶ 1.) Based on the School District's failure to fully evaluate Petrina and the resulting inadequacy of her programming and related services, the Officer found that the School District denied Petrina a FAPE during the time stated in her complaint, from August 2, 2005 through November 6, 2007. (Pl. Ex. A, Order at 32.) The Officer thus ordered the School District to maintain Petrina's present placement at a private school for students with learning disabilities or equivalent until the day before her 22nd birthday, April 14, 2011. *Id.* The Officer declined to provide relief after that day because she found that "[a] claim for compensatory education that would occur past the age of

entitlement is not ripe until the student reaches the age of entitlement. . . . any claim the student may have for compensatory education is not ripe until she turns 22." *Id.*

This case is a timely appeal of the Hearing Officer's Decision and Order. (Pl. SOF ¶ 1.) The School District has not appealed any aspect of the hearing Officer's Order. (Pl. SOF ¶ 2.)

**STANDARD OF REVIEW**

The IDEA authorizes aggrieved parties to file suit in federal court, essentially allowing parties to appeal decisions made by hearing officers. 20 U.S.C. § 1415(i)(2). The IDEA provides that "the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(i)-(iii).

In light of these proscriptions, typical summary judgment standards do not apply in cases brought under the IDEA. *Alex R., ex rel. Beth R. v. Forrestville Valley Cmty. Unit Sch. Dist. # 221*, 375 F.3d 603, 611 (7th Cir. 2004) ("[T]he term "summary judgment" in the context of an IDEA case has a different meaning than it has in a typical Rule 56 motion."). Summary judgment motions under these circumstances "might more accurately be titled 'motion for judgment under the IDEA.'" *Id.* at 611.

On issues of fact, the district court must give "due weight" to the hearing officer's decision. *Id.* at 612. What constitutes "due weight" depends on whether the district court receives new evidence. *Id.* If the district court receives no new evidence, summary judgment acts as a "procedural vehicle for asking the judge to decide the case on the basis

of the administrative record." *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 802 (7th Cir.2004). The district court in this situation can reverse the hearing officer's decision "only if it is 'strongly convinced that the order is erroneous,' " a level of review similar to that of the clear error or substantial evidence standard. *Alex R.*, 375 F.3d at 612 (quoting *Sch. Dist. v. Z.S.*, 295 F.3d 671, 675 (7th Cir. 2002)).

Where, as here, no additional evidence is introduced in a civil suit seeking review of a hearing officer's decision, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record. *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir.1997).

On issues of law, the hearing officer receives no deference; the district court reviews such decisions de novo. *Dale M. ex rel. Alice M. v. Board of Educ.*, 237 F.3d 813, 817 (7th Cir. 2001); *Alex R.*, 375 F.3d at 611.

## ANALYSIS

In her motion for summary judgment, Plaintiff challenges her Hearing Officer's finding of law that her compensatory education claim is not ripe until she reaches the age of 22.

Under the Individuals with Disabilities Education Act ("IDEA"), a disabled child is entitled to a free public education tailored to his special needs until the age of 21. 20 U.S.C. §§ 1400 et seq. Although the IDEA does not explicitly provide for compensatory education beyond that age, "it authorizes the court to 'grant such relief as the court determines is appropriate.' " *Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Todd A.*, 79 F.3d 654, 656 (7th Cir. 1996) (quoting 20 U.S.C. § 1415(e)(2) (now

20 U.S.C. § 1415(i)(2)(C)(iii))). The Seventh Circuit has recognized that, under this language, district courts have the discretion to grant compensatory education as a remedy for past violations of the IDEA. *Id* ("[T]his authorization encompasses the full range of equitable remedies and therefore empowers a court to order adult compensatory education if necessary to cure a violation"); *Michael M.*, 356 F.3d at 803.

Because many IDEA claims arise while the student is still a minor, compensatory education can be appropriately sought and granted prospectively – that is, before the student has reached the age of 21. *See, e.g.*, *Kevin T. v. Elmhurst Community School Dist. No. 205*, No. 01 C 0005, 2002 WL 433061, *2 (N.D. Ill. Mar. 20, 2002) (plaintiffs granted a free education until child turns 21, as well as one additional year of compensatory education); *Kerry M. v. Manhattan School Dist. #114*, No. 03 C 9349, 2006 WL 2862118, at *4-5 (N.D. Ill. Sept. 29, 2006) (plaintiffs asserted that minor children were entitled to compensatory education beyond age 21; such claim prevented the case from being moot); *Todd A.*, 79 F.3d. at 660 (although stay-put order does not extend past a student's 21st year, plaintiff properly filed a claim for compensatory education before reaching that age); *see also G. ex rel. RG v. Fort Bragg Dependent Schools*, 343 F.3d 295, 309 (4th Cir.2003) ("Compensatory education involves discretionary, *prospective,* injunctive relief crafted by a court . . .") (emphasis added).

In light of established practice, the Hearing Officer erred in concluding that Petrina's compensatory education claim was not ripe until she reached the age of 22. The Hearing Officer based her decision on a single, inapposite case, citing a passage nested in a series of hypotheticals. In *Board of Education of Oak Park-River Forest H.S. Dist. No. 200 v. Kelly E.*, the district court denied the defendant student's counter-claims because

5

she "failed to appeal from any decision with which [she was] dissatisfied" and consequently could not demand expanded relief. 210 F.Supp.2d 862, 880 (N.D. Ill. 1998). In the alternative, the court speculated that, because the 18-year-old's award and subsequent settlement enabled her to receive her full FAPE by way of reimbursed educational services through the upcoming year, any claim for additional compensatory education would not be ripe until the school district was no longer required by IDEA to provide a FAPE, that is, after the student reached 21 years of age. *Id.* Nowhere in the *Kelly E.* opinion did the court propose a threshold age for bringing a compensatory education claim in the first instance, as Petrina's Hearing Officer concluded.[1]

Because Petrina's Hearing Officer erroneously failed to address her claim for compensatory education, it falls to this Court to determine how much, if any, compensatory education she is entitled to under IDEA. As the Seventh Circuit has yet to offer guidelines for such an exercise, this Court can either look to the formula developed by the Third Circuit, on the one hand, or the standard adopted by the D.C., Sixth, Ninth, and Eleventh Circuits, on the other.

The Third Circuit has found that a "disabled child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem." *Mary T. v. School Dist.*

---

[1] Defendants strain to reinvent the basis of the Hearing Officer's conclusions. They argue that the Officer's decision to delay her decision on compensatory education was motivated by Petrina's chronic truancy, rather than a misinterpretation of law. Supposedly, the Officer wished to wait and see if Petrina would make good on her remaining schooling before approving education beyond age 21. The Hearing Officer's decision and order cannot be reasonably read to imply such a reading. She clearly attributes her denial of relief beyond Petrina's 22nd birthday to the District Court's holdings in *Kelly E.* (Pl. Ex. A, at 32) ("A claim for compensatory education that would occur past the age of entitlement is not ripe until the student reaches the age of entitlement. . . . Based on *Kelly E.*, the hearing officer finds that any claim the student may have for compensatory education is not ripe until she turns 22.").

*Of Philadelphia*, 575 F.3d 235, 248 (3rd Cir. 2009).  Seeing as the Hearing Officer concluded that Petrina had been denied a FAPE for a period of 27 months, the Third Circuit formula would entitle Petrina to 27 months of compensatory education, less the amount of time it reasonably might have taken the school district to rectify the situation.

Other circuits, however, disapprove of rote, day-by-day formulas for determining compensatory education awards.  *See Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 523 (D.C. Cir. 2005); *Parents of Student W. v. Puyallup School dist. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994); *Board of Educ. of Fayette County, Ky v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007); *Draper v. Atlanta Independent School System*, 518 F.3d 1275, 1290 (11th Cir. 2008).  These circuits emphasize that purpose of IDEA is "to guarantee disabled students 'specialized education and related services designed to meet their unique needs.'"  *Reid*, 401 F.3d at 524 (quoting 20. U.S.C. § 1400(d)(1)(A)); *see also Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 U.S. 176, 201 (1982) ("the basic floor of opportunity provided by the Act consists of access to specialized instruction and related services which are *individually designed* to provide education benefit to the handicapped child") (emphasis added). As the D.C. Circuit observed, "it would be highly incongruous if this qualitative focus on individual needs gave way to mechanical hour-counting when past . . . violations of the FAPE standard were at issue." *Id.*; *see also Parents of Student W.*, 31 F.3d at 1497 ("There is no obligation to provide a day-for-day compensation for time missed.").  "Accordingly, just as IEPs focus on disabled students' individual needs, so must awards compensating past violations rely on individualized assessments." *Reid*, 401 F.3d at 524.  This is particularly appropriate given that some students may require "short, intensive compensatory

programs targeted at specific problems" while others may need "extended programs . . . exceeding hour-for-hour replacement of time spent without FAPE." *Id.*

Because a flexible, individualized approach is more consonant with the aim of IDEA, as articulated in its statutory language and Supreme Court jurisprudence, this Court finds such an approach more persuasive than the Third Circuit's formulaic method. *See* 20. U.S.C. § 1400(d)(1)(A); *Rowley*, 458 U.S. at 201. Unfortunately, based on the information supplied the record, the Court is unable to determine the appropriate amount of compensatory education to which Petrina is entitled under this standard.

According to three independent specialists who evaluated Petrina following her request for private placement, Petrina has significant speech, language, and auditory processing disorders, with deficits in listening, processing, memory, oral and written expression, and reading. (Pl. SOF ¶ 28.) As a teenager, Petrina cannot read, write, or spell, and has math skills at an early elementary level. (Pl. SOF ¶ 40.)

When asked how the school could compensate Petrina for failing to providing her with proper services, one specialist responded, "I don't know. . . . She really needs as much as she could get. And I don't know how they could possibly compensate other than by providing the services now and providing as much as they can for as long as they can . . . She needs a lot, and I don't know how they can possibly make up for her not receiving it." (12/3/07 Hr'g Tr. at 83:24-84:8.) Another specialist offered a more instructive response, answering, "[t]hey can put her in a school that will teach her to read, write, and do math to the highest level she possibly can. My hope is that she will get to sixth grade or better, no matter how long it takes. And that they will pay for or provide her with vocational counseling so that she can transition into being an adult." (1/18/08 Hr'g Tr. at

227:14-21.) As to how long it would take to reach a sixth-grade level, the specialist stated, "[i]t's really hard to quantify. She's going to need to be there until she needs to be there, until she's done. I'd say four to five years." (1/18/08 Hr'g Tr. at 229:14-17.)

Even then, the specialist's estimate is not entirely on point. When reviewing awards, circuits adopting the individualized approach acknowledge that a compensatory education is meant to "remedy . . . an educational deficit created by an educational agency's failure . . . to provide a FAPE to a student." *Reid*, 401 F.3d. at 523 (quoting *G ex rel. RG v. Fort Bragg Dependent Schools*, 343 F.3d 295, 309 (4th Cir. 2003)). As such, awards for compensatory education should be "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id*; *see also Draper*, 518 F.3d at 1290; *Parents of Student W.*, 31 F.3d at 1497 ("Appropriate relief is designed to ensure that the student is appropriately educated within the meaning of the IDEA.").

Therefore, the proper question is not necessarily how much additional education Petrina requires to reach the functional level of a young adult or even a sixth grader. The proper question is how much compensatory education – if any – is necessary to restore Petrina to the position she would have occupied, had the School District provided her with a FAPE during the periods in which she was deprived of one. *See Reid*, 401 F.3d at 518 ("Compensatory awards should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA.").

Because the record does not supply the Court with enough information to make such a finding, the Court remands this matter back to the administrative level. *See* Reid, 401 F.3d at 526. On remand, the administrative proceedings should focus on the amount

of assistance required to put Petrina in the position she should have occupied had she not been denied a FAPE by the School District.

## CONCLUSION

The Court GRANTS Plaintiff's Motion for Summary Judgment and REMANDS the case to the Hearing Officer for further proceedings to determine the amount of compensatory education, if any, required to give Petrina the benefits that would likely have accrued had she been given a FAPE.  As to the issue of attorneys' fees, the parties are to meet and confer under Local Rule 54.3(d) and follow the procedures thereunder.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated:  **December 10, 2009**